USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 0 2 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GIGI JORDAN,

                  Petitioner,

            -v-

ALEX BAILEY, Warden of Rose M. Singer
Center, Rikers Island Correctional Facility,
et al.

                  Respondents.
------------------------------------------------------------X

13 Civ. 7651 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

    Petitioner has been in pre-trial incarceration at Rikers Island for over forty-four (44) months, awaiting trial by New York State on a charge of second-degree murder for killing her son. See People v. Jordan, No. 621/10 (N.Y. City.). She has filed this unusual petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the basis that such prolonged pre-trial detention violates her constitutional right to due process. (See ECF No. 1.) Petitioner and respondents agree that she is unlikely to be tried before late 2014.

    This is a case of first impression: a state court criminal defendant petitioning a federal court to overturn a pre-trial bail determination on the basis of an alleged due process violation due to the length of the pre-trial incarceration. According to petitioner, her prolonged detention is, under Second Circuit precedent, an unconstitutional violation of due process.[1] She acknowledges a failure to exhaust

---

[1] In support of this proposition, petitioner cites to appeals by federal criminal defendants of prolonged pre-trial detention (not state criminal defendants appealed

1

her state court remedies prior to bringing this petition, but asserts that the state court processes have proven unwieldy, prolonged, and futile. Additionally, petitioner asserts that analyzed de novo, this Court should approve the bail package she has proposed because there is no realistic risk of flight.

Respondents argue that this petition is improvidently brought: this Court should and must abstain from interfering in ongoing state criminal matters pursuant to the doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971), and that in any event, petitioner's failure to exhaust her state court remedies requires denial. Respondents assert that petitioner's futility claim is meritless: she has received relatively quick decisions on her state court applications and appeals; and the decisions issued by the state courts have fully and fairly analyzed her arguments. Finally, if this Court were to reach the merits, respondents argue that the appropriate standard of review is that set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which requires significant deference to a state courts' decisions against the background of established federal precedent; they further contend that even were a de novo standard to be applied, denial of petitioner's requested relief would be required.

While petitioner urges this Court to make new law and to take the unprecedented step of overriding a state court's pre-trial bail determination, there is no legal or rational basis for this Court to do so. Simply put, there is a reason why state court bail determinations are not brought before federal courts on habeas

---

to federal court). (See, e.g., Pet.'s Mem. at 36-42, dated October 29, 2013, ECF No. 2.)

petitions: preservation of a state court's right to handle its own criminal proceedings without interference from the federal courts unless there is a complete absence of a state court mechanism is an entrenched and rational legal principle.[2] This country has a firmly established tradition of comity, evincing respect for state court proceedings. This Court is bound to accept this proposition and does so without hesitation or concern.

Federal habeas proceedings are a final check on state court criminal proceedings, acknowledging that there may be rare instances in which constitutional error has occurred and remains un-remedied. It is, of course, conceivable that such error could occur as part of a pre-trial detention determination, and that a constitutional deprivation of liberty could occur and remain un-remedied throughout all state levels of review.[3] In such a situation, federal court review under 42 U.S.C. § 2241 may be appropriate. This is not such a case.

---

[2] Federal courts may, of course, entertain properly brought petitions for habeas corpus; even then, however, such petitions are not ripe prior to exhaustion of all avenues of state court redress. 28 U.S.C. § 2254.

[3] This Court accepts the basic proposition that every day that a person is improperly deprived of liberty is an unrecoverable day of liberty lost. Nonetheless, pre-trial detention in a system in which all criminal defendants are constitutionally entitled to a presumption of innocence necessarily accepts certain limits on this broad proposition. Indeed, a variety of factors, including risk to the community and risk of flight, often require that the presumption of innocence give way to pre-trial detention.

## FACTUAL BACKGROUND

The briefs and appendices submitted in connection with this petition are extensive. (ECF Nos. 2, 4, 18, 19.) They reflect a heavily-litigated state court criminal proceeding in which no stone has been left unturned.[4]

Only a few facts are necessary to this Court's resolution of the instant petition; those wishing additional factual background shall refer to the parties' submissions.

Petitioner does not deny that she killed her eight-year-old son on February 5, 2010 in the Peninsula Hotel in New York City. Her son had been diagnosed with a severe form of autism;[5] there is no dispute that he was nonverbal at the time of his death. Just days prior to killing her son, petitioner informed her aunt that she intended to kill him. When the police arrived at the scene, they took petitioner to the hospital; they found a 20-page suicide note written by petitioner, attempting to explain why she chose to take her son's life. (Pet.'s Mem. at 3-4.)

Petitioner has been charged with second-degree murder – an intentional killing. She is asserting a novel defense of justification based on "altruistic filicide:"

---

[4] This Court notes in passing that a number of the stones turned over appear to have been turned over without obvious value – and that the best way for all to insure a speedy resolution of pre-trial detention is to get this case to trial with all deliberate speed.

[5] This diagnosis itself appears to be the subject of dispute by petitioner; certain of her arguments are based on a view of her son not as autistic but as suffering instead from symptoms similar to severe autism that resulted from what she asserts was the severity of abuse to which he was subjected. The resolution of this issue is not necessary to the outcome of this petition.

4

that she killed her son because it was the only way she could prevent him from suffering what she asserts was further abuse from his biological father. (Id.)

Petitioner has been held since her arrest at Rikers Island in New York. She has requested and been denied bail on three separate occasions. Her first application was made on March 11, 2010 and denied on April 23, 2010. (Id. at 7.) In the denial of this initial bail application, the Honorable Charles H. Solomon's decision contained a number of factual findings regarding petitioner's risk of flight, including her lack of familial or community ties to New York, her real estate holdings outside of New York, her vast financial resources (tens of millions of dollars), the fact that the address she has listed for certain accounts are in Nevada and California (not New York), certain domestic court proceedings brought by petitioner in Nevada, petitioner's estrangement from her family located in New York (including her mother), her lack of active business ties to New York, her lack of employment prior to her incarceration, and the fact that when she was arrested, she had a history of what the bail court referred to as evasive moves to various states. (Pet.'s App. A-005-10, dated October 29, 2013, ECF No. 4.) Additionally, petitioner was found checked in at a hotel blocks from her own apartment in New York City; in the hotel room, she had her passport, credit cards, two checkbooks, four cell phones, two computers, and U.S. currency.[6] (Id.)

Petitioner included a plan for home confinement and monitoring with her initial bail application, including around-the-clock guards. (Pet.'s Mem. at 7.) This

---

[6] On November 27, 2013, petitioner filed a letter providing an explanation as to why petitioner was in possession of certain of these items. (See ECF No. 20.)

5

plan has been included (with some modifications) with each subsequent bail application and forms a significant part of the backdrop to petitioner's claim that even if there was a desire to flee (which she denies), it is unreasonable to believe that she could do so. Petitioner did not appeal this initial denial of her bail application.

On June 7, 2011, sixteen months after her initial pre-trial incarceration, petitioner made a second bail application. (Id.) Again, she included a plan for home confinement and around-the-clock guards. (Id.) The bail court denied this application on August 11, 2011. (Id. at 8.) One of petitioner's complaints is that this denial – also written by Judge Solomon – did not include the type of factual findings as that of April 23, 2010. (Id.)

Petitioner's assertions ignore that Judge Solomon did review what had occurred procedurally over the intervening sixteen months, and referred to the fact that he had reviewed the various factors required pursuant to New York Criminal Procedure Law ("CPL") § 510.30(2)(a), explicitly finding "[t]here no reason to do that again in this decision." (Pet.'s App. A-022.) The court noted that the defense petitioner was pursuing "combines elements of justification, duress[,] and necessity" and "has not previously been advanced in any court in this country." (Id. A-023.)

The court stated that petitioner has argued that since she has a viable defense, the court can be assured that she will appear for trial. (Id.) The court concluded "[w]ithout commenting on the merits of the defense that defendant will present at trial, this is only one of the factors that the Court has considered." (Id.)

6

Finally, the court noted that it had reviewed the extensive submissions on the bail application and had again considered the CPL § 510.30 factors, and denied bail a second time. (Id. A-025.)

On September 12, 2011, petitioner filed a petition for a writ of habeas corpus with the Supreme Court, New York County. (Pet.'s Mem. at 9.) That petition was denied on September 16, 2011. (Id.) On September 22, 2011, petitioner then proceeded by Order to Show Cause to the Appellate Division, applying for interim bail relief, pending appeal. (Id.) The Appellate Division denied the application and the matter was sent to a full panel for determination. (Id.) On November 10, 2011, a full panel denied petitioner's motion for interim relief pending appeal. (Id. at 9-10.)

A series of procedural maneuverings followed, including seeking a calendar preference, which was denied. (Id. at 10.) A panel of the First Department of the Appellate Division heard argument on the petition for habeas corpus on April 12, 2012, and affirmed the denial of the petition on June 21, 2012. People of the State of New York ex rel. Kuby ex rel. Jordan v. Merritt, 96 A.D.3d 607 (N.Y. App. Div. 2012).

In its decision, the Appellate Division determined that there was "a sufficient basis in the record for concern that petitioner may not be capable of consistently controlling her fears and impulses, which in the past have led to flight." Id. at 609. The Appellate Division observed the bail court explicitly considered petitioner's arguments, and supported its rationale with evidence from the record. Id. at 609-

10. As an additional point, the Appellate Court noted that "[p]etitioner's position, if accepted, would mandate that bail be granted in every case in which the accused has the financial resources to offer private security and monitoring, thereby depriving the court of its discretion to grant or deny bail on consideration of the factors enumerated in CPL 510.30(2)(a)." Id. at 610. The Appellate Court held that the facts were sufficient to support the bail court's conclusion that she was a flight risk. Id. at 610-11 (stating that "[w]hile the court made observations regarding the overwhelming evidence against petitioner and the sentence she facts, [the bail court] did not place undue weight on those factors or otherwise abuse its discretion").

The New York Court of Appeals denied leave to appeal on September 18, 2012. (Pet.'s Mem. at 11.)

Petitioner made her third bail application on July 1, 2013. (Id.) She again proposed the bail package with, inter alia, around-the-clock guards. In this application, she specifically challenged the constitutionality of her continued pre-trial detention, citing U.S. v. Gonzales Claudio, 806 F.2d. 334, 342-43 (2d Cir. 1986). (Id.) Judge Solomon denied that application on August 2, 2013. (Id.; see also Pet.'s App. A-035.) In its decision, the court reviewed petitioner's constitutional argument as well as the factors set forth in CPL § 510.30. (Pet.'s App. A-036-37.) Petitioner

claims that the bail court erred in failing to apportion blame for the delays that have occurred in the state court case.[7] (Pet.'s Mem. at 11.)

On August 13, 2013, petitioner filed a writ of habeas corpus, which was denied on August 16, 2013. (Id. at 33.) On August 30, 2013, petitioner filed an appeal; the argument date was set for October 29, 2013. (Id.)

On October 29, 2013, petitioner filed the habeas petitioner currently pending before this Court. (See ECF No. 1.) The Court scheduled briefing and argument on this motion on an expedited basis. (See ECF No. 15.) Days prior to the scheduled argument, the Appellate Division issued its decision affirming the third denial of bail; the court explicitly acknowledged the panel's consideration of the constitutional argument raised. People ex rel. Kuby ex rel. Jordan v. Agro, 2013 WL 6064786 (Nov. 19, 2013). The Appellate Division stated "we reject petitioner's argument that the length of her pre-trial detention violated her right to due process." Id. at *1. The court explicitly found that "petitioner continues to present a serious risk of flight." Id.

Petitioner still has the option of seeking to have her claim heard by the New York Court of Appeals.

---

[7] At oral argument on the instant petition, counsel argued that even if the blame is apportioned 50 / 50, the circumstances have nonetheless reached the point when the constitutional violation assumes precedence over apportionment, particularly in light of what counsel asserts remains the unrealistically low risk of flight.

9

## ANALYSIS

I. <u>Failure to Exhaust</u>

Petitioner argues that no scenario involving an application to the New York Court of Appeals can have a constitutional outcome: if the New York Court of Appeals denies her application, then she simply ends up back in front of this federal court having exhausted her state remedies – but irreplaceable days of liberty would necessarily have been lost. On the other hand, if the New York Court of Appeals allows an appeal, then it may well take months for a decision to be reached – and it is possible that a decision would not be rendered until a trial on the merits had occurred, mooting the appeal (or, at the very least, if they affirmed the decision below, they would then come to this Court at that late point.)

Notably, petitioner has not argued that the New York Court of Appeals would ignore the constitutional question she believes her appeal presents or would otherwise act arbitrarily. Rather, her argument is that the state court process will simply take too long; in the context of such an already lengthy pre-trial detention, such delay is, she asserts, itself a constitutional violation.

There is no doubt that state habeas petitions may only be brought after state court avenues of redress have been exhausted. 28 U.S.C. § 2254; <u>United States ex rel. Scranton v. New York</u>, 532 F.2d 292, 294 (2d Cir. 1976) (explaining while Section 2241 does not expressly include an exhaustion requirement, federal courts have superimposed such a requirement "in order to accommodate principles of

federalism"); see also Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-91 (1973).[8]

To exhaust state court remedies, petitioner must utilize every avenue of state court review. See Ellman, 42 F.3d at 147; Scranton, 532 F.2d at 296. Only when a criminal defendant has no further state alternatives may she seek relief by way of a federal habeas petition. Scranton, 532 F.2d at 296. There is a narrow exception to this rule for rare instances in which exhaustion is, for some reason, futile. Ellman, 42 F.3d at 149 (citing Duckworth v. Serrano, 454 U.S. 1, 3 (1981)). Futility is present when there is a "complete absence of a mechanism for correction of the alleged unconstitutional violation" or the petitioner is "precluded by an unconscionable breakdown from using the process that exists." Francis S. v. Stone, 995 F. Supp. 368, 380 (S.D.N.Y. 1998); see also 28 U.S.C. § 2254(b)(1)(B).[9]

This Court is unaware of any decision, and petitioner has not cited one, in which futility has been based solely upon the length of time that it takes for a state court to entertain an appeal. The passage of time, alone, is not sufficient to rise to the level of a "complete absence of a mechanism for correction of a constitutional violation." Francis S., 995 F. Supp. at 380. Here, for instance, there is no assertion that the state process is moving more slowly than it should – indeed, it appears to

---

[8] The exhaustion requirement is grounded in principles of federal-state comity. Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).
[9] The same principles of comity that allow the superimposition of the exhaustion requirement from Section 2254 onto Section 2241 support a similar superimposition of the principle of futility.

11

have been moving with relative alacrity on the appeals of this matter brought to its various levels.

Petitioner's argument requests that this Court find, as a matter of fact and law, that the New York State Court appellate process is necessarily futile for (at least) all pre-trial issues. When asked to address this point at oral argument, counsel argued that since such a determination would be limited to pre-trial appeals, the proverbial floodgates would not be opened. This is wrong and misses the point. It is wrong because there is no reason why, if a federal court can entertain petitions while criminal proceedings are ongoing, all appeals of state court bail denials would not be immediately appealed to the federal courts. It misses the point because this would allow for significant involvement of the federal courts into traditional (and appropriately so) state court decision-making.

Thus, this Court declines to find that petitioner has exhausted her state court remedies or that the doctrine of futility somehow allows her to avoid this basic requirement. Petitioner must make an appropriate application to the New York Court of Appeals.

This Court acknowledges that any appeal process takes time – and that liberty issues are at stake when such appeals involve incarceration. However, the Court also notes that there is necessarily a tension in all such criminal proceedings concerning the presumption of innocence, actual innocence, and pre-trial detention. Bail determinations are taken seriously (both generally and in the situation currently before the Court) for that very reason.

II.     Federal Court Abstention

Even were the petitioner to have exhausted her state court remedies, however, the Court would decline to entertain the merits of petitioner's claims.

In Younger v. Harris, the Supreme Court made it clear that federal courts should not interfere in state court criminal proceedings. 401 U.S. at 43; see, e.g., Perez v. Ledesma, 401 U.S. 82, 84-85 (1971); Brodeur v. Warden, Eric M. Taylor Center, No. 12 Civ. 5545, 2013 WL 1686527, at *4 (E.D.N.Y. Apr. 18, 2013); Robinson v. Sposato, No. 11 Civ. 191, 2013 WL 1965631, at *3 (E.D.N.Y. May 29, 2012).

A key underlying principle in Younger is federal-state comity: proper respect must be maintained for independent state governance, and a "continuance of the belief that the [n]ational [g]overnment will fare best if the [s]tates and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 43-44; see also Burt v. Titlow, No. 12 Civ. 414, 2013 WL 5904117 (U.S. Nov. 5, 2013). The Supreme Court recently stated that "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights, and [the Supreme Court] has refused to sanction any decision that would reflect negatively upon a state court's ability to do so." Burt, 2013 WL 5904117, at *4 (original alterations omitted) (internal quotation marks and citation omitted); Tafflin v. Levitt, 493 U.S. 455, 458 (1990) ("[T]he States possess sovereignty concurrent with that of the [f]ederal [g]overnment, subject only to limitations imposed by the Supremacy Clause. Under this system of dual

13

sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."). Younger is applicable here, where there is a well-developed and effective state court process; it requires that this Court abstain from interfering with the pre-trial detention determination of a state court criminal defendant.

The Court reaches this determination despite petitioner's arguments that several Second Circuit cases have found, on the facts there presented, that pre-trial detentions of lesser duration were unconstitutional. See United States v. Ojeda Rios, 846 F.2d 167, 168-69 (2d Cir. 1988); Gonzales Claudio, 806 F.2d at 342-43; see also United States v. Zannino, 798 F.2d 544, 548 (1st Cir. 1986). These cases are distinguishable for a number of reasons. First, they are appeals of federal court pre-trial detention within the context of the federal system – there is nothing in these cases to suggest a basis to dispense with the abstention doctrine set forth in Younger. Second, here, the facts demonstrate just the sort of review suggested by Gonzales Claudio as necessary to a constitutional outcome – here, risk of flight has been found now multiple times, and with sufficient justification. Cf. Burt, 2013 WL 5904117, at *4 ("AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" (alterations in original)). Finally, here, there has been a direct review of the constitutional question presented in those cases – duration of pre-trial detention – and a determination that petitioner's due process has not been violated. None of

14

the cases stand for a talismanic period of time that pushes pre-trial detention from constitutional to unconstitutional. All cases must be decided according to their facts, and this one was.

For the reasons set forth above, this Court need not reach the question of whether the AEDPA applies to this petition pursuant to Section 2241, nor whether this Court would, on a <u>de novo</u> review, affirm the bail determination. Instead, it is sufficient that petitioner's bail determinations and petitions for writs of habeas corpus are where they belong: within the state court system.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED. If petitioner is interested in a speedy trial, she should require her trial counsel immediately to seek a hard and near in trial date.

The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:  New York, New York
        December 2, 2013

*K. B. Forrest*
KATHERINE B. FORREST
United States District Judge

15